## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **OPHELIA KILLINGSWORTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | Civil Action Number |
| **BIRMINGHAM-JEFFERSON** | ) | **2:17-cv-00963-AKK** |
| **COUNTY TRANSIT AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Ophelia Killingsworth alleges that her former employer, the Birmingham-Jefferson County Transit Authority ("BJCTA"), violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*, as amended, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12102 ("ADAAA"), and the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. Doc. 1. Specifically, Killingsworth contends that BJCTA failed to accommodate her disability, discharged her because of her gender, disability, and age, and failed to hire her for a supervisory position because of her gender, disability, and age. BJCTA has moved for summary judgment, contending that Killingsworth cannot show a failure to accommodate or discriminatory treatment based on her discharge and the failure to hire her as a supervisor. *See* docs. 32, 33. After reading the briefs, *see id.*; docs. 37, 38, reviewing the evidence, and

1

considering the relevant law, except for the failure to accommodate claim, the court finds that the motion is due to be granted.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).

The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*,

477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.     FACTUAL BACKGROUND

This case arises from Killingsworth's discharge by BJCTA in August 2016. Notably, this case comes before the court on a very sparse record. The court originally provided the parties until August 30, 2018 to conduct discovery, *see* doc. 21 at 1, and, on joint motion by the parties, extended the deadline by two months, *see* doc. 25 at 1. The day before the deadline, BJCTA moved to compel Killingsworth, in part, to sit for a deposition, claiming that counsel for Killingsworth had not responded to BJCTA's inquiries from six weeks earlier to provide Killingsworth's availability for deposition. *See* doc. 26 at 1-2; 26-2. The court denied the motion, in light of the previous extension and BJCTA's failure to show good

cause why it waited until the penultimate day of discovery to raise this issue. *See* doc. 27. Consequently, the only testimony before the court is Killingsworth's written discovery responses, proffered by BJCTA, *see* doc. 32-7, and a sworn declaration, proffered by Killingsworth in response to BJCTA's motion, *see* doc. 37-1.

Turning now to the record before the court, the record shows that the BJCTA hired Killingsworth as a bus operator in October 2000, doc. 37-1 ¶ 2, and that the terms of her employment were governed by a Labor Union Contract Agreement ("the Agreement"), *see id.* ¶ 7; 33-2. Under the Agreement, a BJCTA employee with Killingsworth's length of service could take a leave for personal medical reasons for a period "not to exceed a total medical leave of absence of 18 months." *See* docs. 33-2 at 3; 37-1 ¶ 7. From May 13 to August 5, 2014, Killingsworth missed work due to a knee injury she suffered on the job, *see* docs. 33-3 at 2-5; 37-1 ¶ 3, and received worker's compensation during that time, *see* doc. 37-1 ¶ 3. When Killingsworth returned, BJCTA placed her on light duty until November 2014 because she was allegedly suffering from medical issues related to her back. *See* docs. 33-3 at 5-6; 37-1 ¶ 5. Then, in March 2015, while performing her duties as a bus driver, Killingsworth was struck by another vehicle, reinjuring her back. Doc. 37-1 ¶ 6. BJCTA granted Killingsworth personal medical leave due to this injury, and she remained on leave for the next 15 months. Doc. 36-1 ¶ 6.

While on medical leave, in July 2016, Killingsworth allegedly applied for the position of road supervisor/dispatch supervisor, but BJCTA denied her application although, she contends, she was qualified for the position. *See* docs. 37-1 ¶ 9; 33-7 at 22. BJCTA purportedly informed Killingsworth that it denied her this position because she failed a required test. Doc. 37-1 ¶ 9. Furthermore, at some point while on medical leave,[1] Killingsworth told BJCTA Human Resources employee Carvis King that she "needed to work a class of jobs within the medical restrictions occasioned by my injuries." *Id*. ¶ 11. Killingsworth also told King that: her injuries limited her "in the 'major life activities' of standing, sitting, reaching, lifting and bending" and "in the operation of [her] body's neurological and musculoskeletal functions in that any of the aforementioned activities caused [her] severe pain," *id*. ¶ 12; she "could not lift, push, pull, assist, and secure passengers that needed physical assistance or lift fifty pounds," *id*. ¶ 14; and she suffered permanent joint and back pain that was exacerbated when she drove a bus, *id*. ¶ 13. Finally, Killingsworth specifically requested a supervisory or other non-driving position due to her work-related injuries, *id*. ¶ 13, and "asked for a reasonable accommodation because of these health issues," *id*. ¶ 15.

---

[1] The record is unclear as to when this alleged conversation occurred. *See* doc. 37-1. However, drawing all reasonable inferences in favor of Killingsworth, the court infers that this conversation occurred while Killingsworth was on medical leave. *See Pace*, 283 F.3d at 1276, 1278.

On July 19, 2016, BJCTA sent Killingsworth a letter stating that her "15 months of medical which began on April 10, 2015 has exhausted on July 19, 2016 and you are expected to return to work immediately." Doc. 33-4 at 2. However, Killingsworth did not return to work. *See* doc. 1 ¶ 9; 33 ¶ 6; 37 at 2. Instead, the next day, Killingsworth's doctor, Emmanuel Odi, wrote a letter to BJCTA recommending that BJCTA excuse Killingsworth from work "for an additional month." *See* doc. 33-5 at 2. Dr. Odi wrote an additional letter the following month stating only that Killingsworth "could not return to work at this time due to ongoing medical issues which have not improved." *Id*. at 3. Five days after Dr. Odi's second letter, on August 25, 2016, the BJCTA discharged Killingsworth from her position as a bus operator. Doc. 37-1 ¶ 17. An internal memo from BJCTA President James O. Hill to BJCTA Interim Human Resources Director Michael Simms states that "Ms. Killingsworth's termination was justified" because she was "unable to return to her position at the expiration off [sic] her [medical] leave." *See* doc. 33-6 at 2.

After her discharge, in December 2016, the Social Security Administration granted Killingsworth's application for disability insurance benefits, finding that she had been, and remained, disabled under the Social Security Act since April 9, 2015. Doc. 33-8 at 5. According to the Administrative Law Judge (ALJ)'s opinion, Killingsworth's "impairments collectively precluded her from performing sustained work related physical and mental activities in a work setting on a regular and

continuous basis, 8 hours per day, 40 hours per week, or equivalent work schedule . . ." Doc. 33-8 at 9. The ALJ also concluded that Killingsworth was "unable to perform any past relevant work" and that "there are no jobs that exist in significant numbers in the national economy that [Killingsworth] can perform." *Id.*

## III. ANALYSIS

As an initial matter, Killingsworth's pleads several claims that she has subsequently conceded or abandoned. In her response to BJCTA's motion, Killingsworth explicitly conceded her ADEA claims, and her "gender claims as they relate to all claims except her termination." *See* doc. 37 at 3 n.1. Furthermore, Killingsworth's responsive brief fails to address her ADEA discriminatory discharge claim, and her ADEA, ADA, and Title VII claims for the failure to hire her for the supervisory position. *See* doc. 37. "[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Accordingly, to the extent that Killingsworth did not explicitly concede these claims, the court finds that she abandoned them. Killingsworth's remaining claims on summary judgment are that BJCTA: (1) failed to accommodate her in violation of the ADA, and (2) discharged her based on her

disability and/or gender in violation of the ADA and/or Title VII.[2] The court

addresses each of these claims in turn.

## A. **Statutory Background**

Killingsworth asserts claims under the ADA, as amended by the ADAAA,[3]

and Title VII. Under the ADA, an employer cannot discriminate "against a qualified

individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees . . ." 42 U.S.C. § 12112(a).

Similarly, Title VII makes it unlawful to, *inter alia*, "fail or refuse to hire or to

discharge . . . any individual . . . because of such individual's . . . sex . . ." *See* 42

U.S.C. § 2000e-2. A plaintiff may establish discrimination under these statutes, in

part, by using circumstantial evidence of discrimination and relying on the

---

[2] Killingsworth also asserts, for the first time in her response, a claim that BJCTA discriminated against her based on her race. *See* doc. 37 at 3, 12-16. Although the Complaint cites 42 U.S.C. § 1981a, which creates a cause of action for race discrimination claims, the Complaint does not allege race discrimination or make any mention of Killingsworth's race or the race of any other individual. *See* doc. 1. Nor does the EEOC complaint, which Killingsworth attached to her Complaint, make any mention of race. *See* doc. 1-1. Under Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim" that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Hunt v. Aimco Properties L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Merely citing § 1981a in the Complaint, without more, is plainly insufficient to satisfy this requirement. *See id.*; Fed. R. Civ. P. 8(a)(2). Accordingly, Killingsworth has not adequately plead a race discrimination claim.

[3] In 2008, Congress amended the ADA pursuant to the ADAAA, which, *inter alia*, expanded the coverage of the ADA. *See Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014) (noting that Congress intended for the ADAAA to "lessen the standard of establishing whether an individual has a disability for purposes of coverage under the ADA"). "Because the critical events in this case . . . took place after the ADAAA went into effect," the court applies the post-ADAAA version of the ADA. *See Mazzeo*, 746 F.3d at 1267 (noting that the ADAAA became effective on January 1, 2009).

*McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008) (applying the *McDonnell Douglas* framework to Title VII claim); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (applying *McDonnell Douglas* framework to ADA claim). Under this framework, once the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged conduct. *Cleveland*, 369 F.3d at 1193. The defendant "simply ha[s] the burden of production;" it need not "persuade the court it was motivated by the [proffered] reason." *Id*. (citation omitted); *see Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). If the defendant does so, defeating the presumption of discrimination, the burden then shifts back to the plaintiff to show the articulated reason is "unworthy of credence" and a pretext for discrimination. *Cleveland*, 369 F.3d at 1193. However, "[i]f the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment." *Wascura v. City of South Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001).

To establish a *prima facie* ADA violation, a plaintiff must show that: (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning she could perform the essential functions of the job in question with or without

reasonable accommodations; and (3) she was discriminated against because of her disability. *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001). Notably, "[a]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007). In other words, if the plaintiff establishes a failure to provide reasonable accommodation based on circumstantial evidence, she need not satisfy the elements of the *McDonnell Douglas* burden-shifting framework. *Id*.

On the other hand, to establish a *prima facie* case for disparate treatment under Title VII, a plaintiff must show that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

B. **Failure to Accommodate Claim**

BJCTA contends that Killingsworth cannot establish a failure to accommodate under the ADA. While BJCTA concedes that Killingsworth was an individual with a disability, *see* docs. 33; 38, it contends that Killingsworth's failure

to accommodate claim fails, first, because she is estopped from contending that she is a "qualified individual," and, second, because she could not perform the essential duties of the Bus Operator position. *See* doc. 33 at 29-32.

1. Whether Killingsworth's Receipt of SSDI Estops Her From Asserting That She Was Qualified for the Bus Operator Position.

The ADA defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). BJCTA contends that Killingsworth's receipt of SSDI benefits creates a rebuttable presumption that she is judicially estopped from asserting that she was a "qualified individual" under the ADA, and that Killingsworth has offered no evidence to rebut that presumption. *See* doc. 38 n.5.[4] In *Cleveland v. Policy Management Systems Corporation*, the Supreme Court held that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." 526 U.S. 795, 797 (1999). However, "[t]o survive a defendant's motion for summary judgment, [the plaintiff] must explain why [her] SSDI contention [that she was too disabled to work] is consistent with her ADA claim that she could 'perform the

---

[4] Although the BJCTA makes this contention for the first time in its reply brief, it does so in response to Killingsworth's contention that she is *not* judicially estopped from asserting her ADA claims. *See* doc. 37 at 17-24. Thus, although the court "ordinarily do[es] not consider arguments raised for the first time on reply[,]" because Killingsworth raised this issue, the court will consider this contention. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. J.F. Morgan Gen. Contractors, Inc.*, 79 F. Supp. 3d 1245, 1256 (N.D. Ala. 2015) (citation omitted).

essential functions' of her previous job, at least with 'reasonable accommodation.'" *Id*. at 798. Subsequently, in *Hayes v. Voestalpine Nortrak, Inc.*, on which BJCTA relies, this court held that, based on *Cleveland*, an ADA plaintiff's SSDI application and subsequent receipt of SSDI created "a rebuttable presumption that [he] is judicially estopped from asserting that [he] is a qualified individual with a disability." 185 F. Supp. 3d 1314, 1320 (N.D. Ala. 2016) (citing *Cleveland*, 526 U.S. at 797-98).

However, in *Hayes*, unlike here, the record before the court included the plaintiff's SSDI application, in which "he claimed total disability[.]" *Id*. Although BJCTA has proffered the ALJ's findings that, *inter alia*, Killingsworth "has been under a disability [under the SSA] since . . . [her] alleged onset date of disability," doc. 33-8 at 10, and that Killingsworth cannot perform any "past relevant work," *id*. at 9, it has not shown that Killingsworth claimed "total disability" or an inability to perform the essential functions of a bus operator in her SSDI application. *See Hayes*, 185 F. Supp. 3d at 1320. Accordingly, the court cannot conclude, based on the record before it, that the failure to accommodate claim is inconsistent with any "previous sworn statement" by Killingsworth in her SSDI claim. *See Cleveland*, 526 U.S. at 806-07 (explaining that, "[w]hen faced with a plaintiff's *previous sworn statement* asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim." (emphasis

added)); *Talavera v. Sch. Bd. of Palm Beach Cty.,* 129 F.3d 1214, 1220 (11th Cir.1997) ("[A]n ADA plaintiff is estopped from denying the truth of any statements *made in her disability application*." (emphasis added)). Therefore, BJCTA is not entitled to a rebuttable presumption of judicial estoppel.

## 2. Whether Killingsworth Was a Qualified Individual Under the ADA.

To show that she is a "qualified individual," "an ADA plaintiff must show either that [s]he can perform the essential functions of [her] job without accommodation, or, failing that, . . . that [s]he can perform the essential functions of [her] job with a reasonable accommodation." *Holly,* 492 F.3d at 1256. "An accommodation can qualify as 'reasonable,' and thus be required by the ADA, only if it enables the employee to perform the essential functions of the job." *Lucas,* 257 F.3d at 1256. The plaintiff "bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *See Lucas,* 257 F.3d at 1255–56.

"The ADA's implementing regulations provide that '[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires,' and 'does not include the marginal functions of the position.'" *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir. 2005) (quoting 29 C.F.R. § 1630.2(n)(1)). Given that the ability to drive a bus is "the reason the [bus operator] position exists," this constitutes an "essential

function." *See D'Angelo*, 422 F.3d at 1230 (noting that, pursuant to the ADA regulations, "a job function may be deemed essential [if] . . . the reason the position exists is to perform the function[.]"); *see* 29 C.F.R. § 1630.2(n)(2)(i). Furthermore, BJCTA's job description for the bus operator position, which was in effect at the time of Killingsworth's termination, *see* doc. 33-1 at 1, lists as an "essential dut[y]" that the employee must "operate[] wheelchair lifts and assist[] handicapped [sic] in boarding, riding and alighting in a safe manner[,]" *id*. at 2. The job description also notes that, in order "to successfully perform the essential functions of [the] job," the employee will be "regularly required to sit; use of hands and fingers, handle or feet reach with hands and arms; . . . . Position requires ability to lift, push, pull, assist and secure wheelchair passengers and a minimum of 50 lbs." Doc. 33-1 at 4. Accordingly, in light of this "written description" of the job, the court also finds that assisting disabled passengers is an "essential function" of the position. *See* 42 U.S.C. § 12111(8) ("[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.").

It is undisputed that Killingsworth could not perform the "essential functions" of a bus operator—namely, the functions of driving a bus and assisting disabled passengers—without reasonable accommodation. *See* doc. 38 at 7; 37. As BJCTA

notes, in granting Killingsworth SSDI benefits, the ALJ found that Killingsworth had been disabled under the SSA since April 9, 2015, and that her impairments prevented her from performing "any past relevant work" including "sustained work related physical and mental activities in a work setting on a regular and continuous basis, 8 hours per day, 40 hours per week[.]" *See* doc. 33-8 at 9-10. Moreover, Killingsworth stated in her declaration that, prior to her termination, she informed King that: she was limited in her ability to stand, sit, reach, lift and bend, all of which caused her severe pain, *see* doc. 37-1 ¶ 12; that she had permanent joint and back pain "that was exacerbated by continuing to drive a bus," *id*. ¶ 13; and that she "could not lift, push, pull or assist and secure passengers that needed physical assistance or lift fifty pounds," *id*. ¶ 14. And, it is also undisputed that Killingsworth cannot identify a "reasonable accommodation" that would allow her to perform the essential functions of this position. *See Lucas*, 257 F.3d at 1255–56; doc. 37.[5] Thus, Killingsworth was not a "qualified individual" for the bus operator position.

---

[5] In the interest of completeness, the court notes two possible instances in the record that could constitute requests by Killingsworth for an accommodation of additional leave: (1) Dr. Odi's July 20, 2016 letter, recommending that Killingsworth be excused "from work for an additional month," *see* doc. 33-5 at 2; and (2) his second letter, stating that Killingsworth "cannot return to work at this time due to ongoing medical issues which have not improved," *see id*. at 3. "[S]everal courts have specifically found that a doctor's note with restrictions is sufficient to constitute a request for an accommodation." *Roundtree v. Florida*, No. 3:13-cv-1490-J-25-MCR, 2015 WL 3756811, *4 (M.D. Fla. May 26, 2015). However, there is no evidence that additional leave would have "enable[d] [Killingsworth] to perform the essential functions of the job." *See Lucas*, 257 F.3d at 1256. "Nothing in the text of the reasonable accommodation provision requires an employer to wait for an indefinite period for an accommodation to achieve its intended effect." *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997) (citation omitted). Accordingly, there is

3. <u>Whether BJCTA Failed to Accommodate Killingsworth</u>

Killingsworth contends also that BJCTA violated the ADA because it failed to engage in an "interactive process" to determine whether she was "qualified to perform the essential functions of any other positions[.]" *See* doc. 37 at 9. The ADA regulations provide that, "'[t]o determine the appropriate reasonable accommodation, it may be necessary for [an employer] to initiate an informal, interactive process with the qualified individual with a disability [. . .]' to identify the employee's limitations and any possible accommodations." *See Williams v. Revco Disc. Drug Centers, Inc.*, 552 F. App'x 919, 922 (11th Cir. 2014) (quoting 29 C.F.R. § 1630.2(o)(3)); doc. 37 at 9-12. Accordingly, Killingsworth contends that BJCTA's duty to engage in the "interactive process" was triggered when she "requested a reasonable accommodation regarding her work limitations[,]" but that it failed to fulfill this obligation. *See* doc. 37 at 11.

However, "the ADA provides no cause of action for 'failure to investigate' possible accommodations[.]" *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (citing *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996)). "Where the employee fails to identify a reasonable accommodation, the employer has no affirmative duty to engage in an 'interactive process' or to show

no evidence in the record that a "reasonable accommodation" would enable Killingsworth to perform the essential functions of a bus operator.

undue hardship." *Spears v. Creel*, 607 F. App'x 943, 948 (11th Cir. 2015) (per curiam) (citing *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000)). In other words, "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Willis, Inc.*, 108 F.3d at 285; *see McKane v. UBS Fin. Servcs., Inc.*, 363 F. App'x 679, 682 (11th Cir. 2010) (finding that showing a specific "request for accommodation" was insufficient if plaintiff could not establish that a reasonable accommodation existed).

Killingsworth contends that her request to King for placement in "a supervisory or other non-driving position" due to her disability was a request for reasonable accommodation. *See* doc. 37 at 11; 37-1 ¶ 13. While a "[r]easonable accommodation may include: . . . reassignment to a vacant position, . . . .," 42 U.S.C. § 12111(9)(B); *see* 29 C.F.R. § 1630.2(*o*)(2), "[r]eassignment to another position is a required accommodation *only* if there is a vacant position available for which the employee is otherwise qualified," *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997) (emphasis in original) (quoting *Willis*, 108 F.3d at 285). Furthermore, the ADA does not "require [an] employer to promote a disabled employee" as an accommodation. *See Lucas*, 257 F.3d at 1256. Here, however, while the BJCTA repeatedly refers to selection for the road supervisor/dispatch supervisor position(s) as a promotion, *see generally* docs. 33, 38, the sparse record does not

contain any information about what the position(s) entailed, and it is unclear if Killingsworth's selection for the position(s) would have resulted in a promotion for her. Therefore, the court cannot find at this juncture that her rejection for the position(s) does not qualify as a failure to accommodate. *See* docs. 37-1 ¶ 9; 33-7 at 22. Likewise, the court cannot find on this record, as BJCTA alleges, that Killingsworth's award of SSDI meant "Killingsworth was not qualified for *any* position . . ." (emphasis by BJCTA). *See* doc. 33 at 32. Therefore, because BJCTA challenges Killingsworth's qualifications solely on the SSA's finding and has not argued otherwise that Killingsworth does not have the proper qualifications or experience for the position(s), or that reassignment would be unreasonable under BJCTA's "existing policies," *see U.S.E.E.O.C. v. St. Joseph's Hospital, Inc.*, 842 F.3d 1333, 1345 (11th Cir. 2016) (citation omitted), BJCTA's motion on the failure to accommodate claim fails. *See Howell v. Michelin Tire Corp.*, 860 F. Supp. 1488, 1492-93 (M.D. Ala. 1994) (finding genuine issue of material fact as to whether defendant could have reasonably accommodated plaintiff by reassigning him to "new, less strenuous positions"). The claim will proceed as to Killingsworth's contention related to her request for placement in road supervisor/dispatch supervisor positions, or "other non-driving positions."

## C. Discriminatory Discharge Claims

Next, BJCTA contends that Killingsworth cannot establish discriminatory discharge claims under the ADA or Title VII. *See* docs. 33; 38. Killingsworth relies on circumstantial evidence to establish her discriminatory discharge claims and, therefore, the court will analyze these claims under the *McDonnell Douglas* framework. *See McCann*, 526 F.3d at 1373; *Cleveland*, 369 F.3d at 1193.

### 1. Whether Killingsworth Can Satisfy A *Prima Facie* Title VII Violation

It is undisputed that Killingsworth, as a woman, is a member of a protected class under Title VII, *see* doc. 33 at 11, and her termination was an "adverse employment action." Therefore, she satisfies the first and third prong of her *prima facie* case. *See Maynard*, 342 F.3d at 1289; *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (defining an "adverse employment action" as including termination). At issue here is BJCTA's contention that Killingsworth cannot satisfy the second prong—that she was qualified for the bus operator position from which she was discharged. *See id.*; doc. 33 at 12-13.

"[T]o demonstrate that [s]he was qualified for the position, a Title VII plaintiff need only show that . . . she satisfied an employer's objective qualifications." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). However, as BJCTA notes, Killingsworth cannot satisfy the objective qualifications of the position, which, *inter alia*, requires the "ability to lift, push, pull, assist and secure wheelchair

passengers and a minimum of 50 lbs." *See* doc. 33-1 at 4. As discussed, *supra* III.B.2, Killingsworth stated that she "could not lift, push, pull or assist and secure passengers that needed physical assistance or lift fifty pounds." Doc. 33-1 ¶ 14. Accordingly, Killingsworth cannot satisfy the "objective qualifications" of the bus operator position and, therefore, cannot establish a *prima facie* case under Title VII. *See Anderson v. Embarq/Spring*, 379 F. App'x 924, 928-29 (11th Cir. 2010) (finding that the Title VII discharge claim failed because plaintiff could not satisfy the "objective employment qualifications" of his job as a result of his disabilities).

Nevertheless, even if Killingsworth was qualified for her position, she has not produced sufficient evidence to satisfy the fourth and final prong of her *prima facie* case—that she "was replaced by a person outside [her] protected class or was treated less favorably than a similarly-situated individual outside [her] protected class." *See Maynard*, 342 F.3d at 1289. To begin, there is no evidence in the record that Killingsworth was replaced by anyone. *See id*. And, Killingsworth has failed to demonstrate that she was "treated less favorably than a similarly-situated" male employee. *See id*. Where, as here, a plaintiff relies on comparator evidence to establish disparate treatment, she must demonstrate that she and her comparators are "similarly situated in all material respects." *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1224 (11th Cir. 2019). While this standard does not require Killingsworth to produce comparators "nearly identical" to her, *see id*. at 1226-27,

she and her comparators "must be sufficiently similar, in an objective sense, that they 'cannot reasonably be distinguished[,]'" *id*. at 1228 (quoting *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1355 (U.S. 2015)). Courts must apply this standard "on a case-by-case basis, in the context of the individual circumstances" of the case, considering, among other things, whether the plaintiff and her comparators "engaged in the same basic conduct (or misconduct)," were "subject to the same employment, policy, guideline, or rule," were "under the jurisdiction of the same supervisor," and shared similar employment or disciplinary histories. *Id*. at 1227-28 (citations omitted).

First, Killingsworth testified that "[m]ale, white, and/or non-disabled employees . . . were allowed to take all of their leave time without being terminated." *See* doc. 37-1 ¶ 8. It is unclear, however, who the referenced "[m]ale, white, and/or non-disabled employees" are: Killingsworth did not identify these individuals in her declaration, *see* doc. 37-1, but named three individuals—Draper Mason, Chris Ruffin, and "Copeland"—in her Interrogatory Responses who allegedly received preferable treatment, *see* doc. 33-7 at 21. Assuming these individuals are the employees who BJCTA allegedly allowed to take all of their leave time without termination, however, Killingsworth has not shown that they are "similarly situated in all material respects." *See Lewis*, 918 F.3d at 1227-28. Killingsworth has not provided any evidence that these individuals shared the same position as her, shared

a similar employment history, or were subject to the same 18-month policy that governed Killingsworth's leave time. *See Lewis*, 918 F.3d at 1227-28. Indeed, without more information, Killingsworth cannot raise a genuine issue of material fact that the three employees "cannot reasonably be distinguished" from her. *Id*. at 1228.

Next, Killingsworth testified that a "white [male] bus driver who had been terminated for being under the influence or impaired while at work was allowed to transfer to a previously non-existent customer service position and remained there until his retirement." *See* doc. 37-1 ¶ 17. Killingsworth waited, however, until her response to the motion for summary judgment to mention this individual even though BJCTA specifically asked her in written discovery to "[i]dentify by name and age the 'younger male and/or nondisabled' [BJCTA] employees whom you allege to have received preferably [sic] treatment as described in your complaint." *See* doc. 33-7 at 21.[6] Absent a showing of substantial justification or harmlessness, which Killingsworth has not made, she cannot defeat summary judgment by citing evidence she never disclosed during discovery. *See* Fed. R. Civ. P. 37(c)(1) ("If a

---

[6] In response to this question, Killingsworth identified, "Draper Mason, 30s[.] Chris Ruffin-Plaintiff cannot recall age at this present time. Copeland-Plaintiff cannot recall age or first name at this present time." *See* doc. 33-7 at 21. Additionally, when asked to "[i]dentify and describe with specificity and particularity each and every fact which supports your claim that the defendants discriminated against you on the basis of your sex as referenced in the Complaint[,]" Killingsworth stated, "[a]fter being placed on sick leave, Defendant hired multiple males in the supervisory position Plaintiff applied for." *Id*. at 16.

party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."). Moreover, the bus driver is not "similarly situated in all material respects" to Killingsworth because he did not "engage[] in the same basic conduct": he was allegedly terminated "for being under the influence or impaired while at work," *see* doc. 37-1 ¶ 17, not for exceeding his leave time and being "unable to return to [his] position[,]" *see* doc. 33-6 at 2. *See Lewis*, 918 F.3d at 1227. Finally, like the three "male, white, and/or non-disabled employees" Killingsworth mentions, there is no evidence that the unidentified "white bus driver" shared a similar employment history to Killingsworth. *See* doc. 37-1 ¶ 17. Therefore, Killingsworth cannot establish a *prima facie* case of Title VII gender discrimination based on her termination.

2. Whether Killingsworth Can Satisfy A *Prima Facie* ADA Violation

As discussed, *supra* III.B.2, Killingsworth cannot show that she is a "qualified individual" within the meaning of the ADA because she cannot perform the essential functions of the bus operator position, with or without reasonable accommodation. *See* 42 U.S.C. § 12111(8); *McCoy v. Geico General Ins. Co.*, 510 F. Supp. 2d 739, 748 (M.D. Fla. 2007) (noting that *prima facie* case for discrimination under ADA is the same under disparate treatment and failure to accommodate theories). However, even if Killingsworth could show she was a "qualified individual," she has not

produced sufficient evidence to show she was discharged "because of [her] disability." *See Lucas*, 257 F.3d at 1255. "Liability in a disparate-treatment case [under the ADA] 'depends on whether the protected trait . . . actually motivated the employer's decision.'" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (citation omitted). Apart from her failure to accommodate claim, Killingsworth advances no argument as to how the record indicates that her disability "actually motivated" BJCTA's decision to discharge her. *See Resolution Tr. Corp.*, 43 F.3d at 599 ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). To the extent Killingsworth relies on any of her proffered comparators to demonstrate discrimination, these comparators are not "similarly situated" for the reasons discussed above, in addition to the fact that she has not identified which, if any, of them are non-disabled. *See supra* III.C.1; *Lewis*, 918 F.3d at 1227-28; *Hill v. Branch Banking and Trust Co.*, 264 F. Supp. 3d 1247, 1260 (N.D. Ala. 2017) (finding that plaintiff failed to show she was terminated "because of" her disability in part because her comparators were not "similarly situated"). Therefore, Killingsworth cannot establish a *prima facie* case of ADA discrimination based on her discharge.

### 3. Whether Killingsworth Can Demonstrate Pretext

Even assuming that Killingsworth could establish a *prima facie* case under the ADA and/or Title VII, she has not produced sufficient evidence to rebut BJCTA's

proffered nondiscriminatory reason for her discharge. *See Cleveland*, 369 F.3d at 1193. BJCTA proffers that it discharged her because she was "unable to return to her position" after using her allowable medical leave time. *See* doc. 33 at 17-18; 33-6 at 2. In response, Killingsworth contends that these reasons are pretextual because the record indicates BJCTA "deviat[ed] from a normal policy or procedure . . . in a discriminatory manner." *See* doc. 37. In support of this contention, Killingsworth cites again the BJCTA's rehiring of an unnamed white male bus driver to a new position after discharging him. *See* doc. 37 at 14-15. However, in addition to not disclosing this individual during discovery, Killingsworth fails to identify any established "policy or procedure" that BJCTA purportedly deviated from in rehiring the bus driver. *See Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1279 (11th Cir. 2002) (finding that defendant's decision not to post a job opening did not deviate from "a clearly established personnel policy"); *Dukes v. Shelby Cty. Bd. of Educ.*, No. 2:16-CV-00340-RDP, 2018 WL 925256, at *11 (N.D. Ala. Feb. 16, 2018), *aff'd*, 762 F. App'x 1007 (11th Cir. 2019) (finding plaintiff failed to show defendant deviated from standard procedures where he failed to identify an "established policy"). Furthermore, the circumstances surrounding the bus driver's rehiring are distinguishable, given that BJCTA allegedly discharged him for being under the influence, an issue which, unlike Killingsworth's, is one that is treatable and does not render him unable to return to work after using his medical leave time.

*See* doc. 37-1 ¶ 17. *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279-80 (11th Cir. 2008) (finding plaintiff failed to show pretext based on favorable treatment of purported comparator because comparator's alleged misconduct differed from plaintiff's).

Next, Killingsworth contends that she had not used up all of her allowable medical leave and, therefore, this proffered reason is pretextual. *See* doc. 37 at 4-5; 37-1 ¶¶ 7. However, it is unclear why Killingsworth believes this to be the case, given that she took leave for medical reasons from May 13, 2014 to August 5, 2014, *see* docs. 33-3 at 2-5; 37-1 ¶ 3, and again from April 9, 2015 to August 25, 2016, *see* doc. 37-1 ¶¶ 6-7, totaling over eighteen months of medical leave. *See* doc. 33-2 at 3 (noting that an employee's leave of absence is "not to exceed a *total* medical leave of absence of 18 months." (emphasis added)). To the extent Killingsworth contends that her 2014 period of leave does not count as "personal medical leave" under the CBA because she received worker's compensation during that time, *see* doc. 37-1 ¶ 3, she has produced no evidence to that effect. Moreover, Killingsworth does not dispute that she was "unable to return to her position" when her leave purportedly expired on July 20, 2016 or when BJCTA discharged her on August 25, 2016. *See* doc. 33-6 at 2; 37-1. Accordingly, Killingsworth has failed to rebut BJCTA's proffered nondiscriminatory reason for her termination.

4. <u>Whether Killingsworth Can Otherwise Demonstrate Discrimination</u>

As Killingsworth notes, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Killingsworth contends that, even if she cannot satisfy the elements of the *McDonnell Douglas* framework for her discrimination claims, the record presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See id.* (citation omitted); doc. 37 at 12-16. However, "[t]o the extent [the plaintiff] relies on a mosaic of discrimination theory, he must present the tiles and create the mosaic instead of expecting the court to piece it together for him." *Murphree v. Colvin*, No. CV-12-BE-1888-M, 2015 WL 631185, at *8 (N.D. Ala. Feb. 13, 2015). The only fact that Killingsworth identifies as creating a "convincing mosaic of circumstantial evidence" is the unnamed white male bus driver BJCTA rehired after discharge she mentions for the first time in opposition to summary judgment. *See* doc. 37 at 14-15. For the reasons discussed above, *supra* III.C.3, this sole fact is insufficient to establish "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Compare Smith*, 644 F.3d at 1328 (finding sufficient circumstantial evidence where plaintiff presented evidence that employer used

discipline "matrix" that considered his white race and issued less severe sanctions for African-American employees than white employees) *with Awaad v. Largo Medical Center, Inc.*, 564 F. App'x 541, 544 (11th Cir. 2014) (finding that single comment from superior that plaintiff "was practicing medicine 'the Palestinian way'" did not create a genuine issue of material fact that there was a "convincing mosaic of circumstantial evidence" of discrimination).

## IV. CONCLUSION

Based on this record, Killingsworth has failed to show a genuine issue of material fact exists concerning her ADA or Title VII discriminatory discharge claims. Therefore, BJCTA's motion is due to be granted as to these claims. However, Killingsworth has raised a genuine issue of material fact as to whether BJCTA failed to provide a reasonable accommodation when it did not hire her for the road supervisor/dispatch supervisor position(s). Therefore, BJCTA's motion for summary judgment is due to be denied on Killingsworth's failure to accommodate claim. The court will issue a separate order consistent with these findings.

**DONE** the 19th day of August, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE